**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

-------------------------------------------------------------------x

WESTCHESTER FIRE INSURANCE COMPANY,

Plaintiff,

v.

SMC CONSTRUCTION CORPORATION,
DIAMANTE REALTY, LLC and SALVATORE
COPPOLA,

Defendants.

-------------------------------------------------------------------x

ROSS, J.

POHORELSKY, M.J.

Case No.:

**COMPLAINT**

FILED
CLERK

2015 AUG 14  AM 10: 36

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

CV 15     4756

Plaintiff, Westchester Fire Insurance Company (hereinafter referred to as "Westchester"

or "Surety"), as and for its Complaint in the above-captioned civil action, alleges the following:

**JURISDICTION AND VENUE**

1.      This Court has subject matter jurisdiction over this matter pursuant to 28 U.S.C.

§ 1332 in that this is an action between citizens of different states and the amount in controversy

exceeds $75,000.00, exclusive of interest and costs.

2.      This Court possesses the power to declare the respective rights and other legal

relations of Westchester and the Defendants as requested herein pursuant to 28 U.S.C. § 2201(a).

3.      This Court has personal jurisdiction over the defendants because all defendants

are residents of the State of New York, Defendant SMC Construction Corporation's principal

place of business is in the County of the Suffolk, and Defendant Diamante Realty, LLC's

principal place of business is in the County of the Suffolk.

4.      Venue is proper over the Defendants pursuant to 28 U.S.C. §1391(b)(1) because

all defendants are residents of the State of New York, Defendant SMC Construction

Corporation's principal place of business is in the County of the Suffolk, and Defendant

Diamante Realty, LLC's principal place of business is in the County of the Suffolk.

## THE PARTIES

5.     Westchester, whose address is 436 Walnut Street, Philadelphia, PA 19106 is a

corporation organized and existing under the laws of the Commonwealth of Pennsylvania and is

duly authorized to conduct business within the State of New York as a Surety, and to execute and

issue Surety Bonds in the State of New York.

6.     Upon information and belief, Defendant SMC Construction Corp. ("SMC"),

whose address is 77 Gazza Boulevard, Farmingdale, NY, 11735 is a corporation organized and

existing under the laws of the State of New York.

7.     Upon information and belief, Defendant Diamante Realty, LLC ("Diamante"),

whose address is 77 Gazza Boulevard, Farmingdale, NY, 11735 is a limited liability company

organized and existing under the laws of the State of New York.

8.     Upon information and belief, Defendant Salvatore Coppola is an individual

residing at 3 Debbie Gate Street, Farmingville, NY 11738.

## THE AGREEMENTS OF INDEMNITY

9.     SMC was at all relevant times engaged in the construction business in connection

with construction projects.  SMC was required provide performance and payment bonds in

connection with certain construction contracts.

10.     On or about September 7, 2005 the defendants SMC and Salvatore Coppola, in

partial consideration of, and as an inducement to Westchester for the execution by Westchester

of certain bonds or undertakings, did duly execute an Agreement of Indemnity, by the terms of

which Defendants undertook and agreed, jointly and severally, among other things, to:

> "exonerate, indemnify and keep indemnified the Surety from and against any
> and all liability and/or expense of whatsoever kind or nature (including but not
> limited to, interest, court costs, and counsel fees) and from and against any
> and all such losses and/or expenses which the Surety may sustain and incur:
> (1) By reason of having executed or procured the execution of Bonds, (2) By
> reason of the failure of the Principals or Indemnitors to perform or comply
> with the covenants and conditions of this Agreement of (3) In enforcing any
> of the covenants and conditions of this Agreement.  Payment by reason of the
> aforesaid causes shall be shall be made to the Surety by the Principals and
> Indemnitors as soon as liability exists or is asserted against the Surety,
> whether or not the Surety shall have made any payment therefor.  Such
> payment shall be equal to the amount of reserve set by the Surety.  In the
> event of any payment by the Surety, the Principals and Indemnitors further
> agree that in any accounting between the Surety and the Principals, or
> between the Surety and the Indemnitors, or either or both of them, the Surety
> shall be entitled to charge for any and all disbursements made by it in good
> faith in and about the matters herein contemplated by this Agreement under
> the belief that it is or was liable for the sums and amounts disbursed, or that it
> was necessary or expedient to make such disbursements, whether or not such
> liability, necessity or expediency existed; and that the vouchers or other
> evidence of any such payments made by the Surety shall be prima facie
> evidence of the fact and amount of the liability to the Surety."

*See* Para. SECOND: INDEMNITY of Agreement of Indemnity dated September 7, 2005,

annexed hereto as Exhibit **A**.

11.     On or about June 15, 2009 the defendants SMC, Diamante and Salvatore

Coppola, in partial consideration of and as an inducement to Westchester for the execution by

Westchester of certain bonds or undertakings, did duly execute an Agreement of Indemnity, by

the terms of which Defendants undertook and agreed, jointly and severally, among other things,

to:

> "…exonerate, hold harmless, indemnity and keep indemnified SURETY from
> and against all claims, demands and liability for losses, costs, and expenses of
> whatsoever kind or nature, including but not limited to court costs, counsel fees,
> costs of investigation, accountant fees, engineer or construction management
> fees, together with interest thereon at the maximum rate allowed by law, which
> SURETY may sustain or incur by reason of or in consequence of the:
>
> A. Execution or procurement of the execution of BOND(s);

    B.  Failure by PRINCIPAL(s) or INDEMNITOR(s) to perform or comply with any of the covenants or conditions of this AGREEMENT;

    C.  Any Event of Default hereto;

    D.  Enforcement of any covenant of this AGREEMENT;

    E.  Performance of any investigation, attempt or attainment of any release in connection with any BOND(s) or any loss or unpaid premium in connection with any BOND(s);

    F.  Prosecution or defense of any action or claim in connection with any BOND(s), whether Surety, at its own discretion, elects to employ counsel of its own solicitation or permits or requires PRINCIPAL(s) or INDEMNITOR(s) to make arrangements for SURETY's legal representation;

    G.  Attempt to recover losses or expenses paid or incurred in connection with this AGREEMENT, CONTRACT(s) and/or BOND(s)...."

*See*, ¶THIRD of Agreement of Indemnity dated June 15, 2009, annexed hereto as Exhibit **B**.

12.    Following the Defendants' execution of the Agreements of Indemnity, SMC obtained payment bonds and performance bonds from Westchester for multiple projects. In addition, Westchester, at the request of SMC, issued numerous lien discharge bonds filed in connection with the various projects.

13.    As a result of claims made against the various bonds issued by Westchester, Westchester has incurred losses of $3,298,896.

14.    As of May 20, 2015, Westchester has incurred $742,493.90 in expenses, including legal expenses, in resolving the claims and litigation in connection with claims asserted against Westchester's bonds.

15.    Westchester has recovered monies, to date, of $287,271.60.

16.    Westchester's combined losses and expenses total $4,041,389.90. Deducting Westchester's recovery of $287,271.60, the Defendants, pursuant to the Indemnity Agreements are obligated to indemnify Westchester in the amount of $3,754,118.30.

### AS AND FOR A FIRST CAUSE OF ACTION
### (Breach of Contract)

17.     Westchester repeats and re-alleges the allegations set forth in paragraphs 1
through 16 as though set forth at length herein.

18.     Defendant SMC entered into numerous contracts with public entities.

19.     At the request of Defendants, Westchester, as Surety, executed numerous
performance and payment bonds for various projects throughout area.

20.     On numerous projects that SMC had contracted, SMC failed to pay subcontractors
and suppliers.  Liens were filed against the project monies.  Westchester, at the request of the
Defendants, issued numerous lien discharge bonds.

21.     The Bonds were executed and delivered by Westchester, as Surety, in
consideration of and in reliance upon, among other things, the written Agreements of Indemnity.

22.     Thereafter, Westchester resolved claims asserted against its various bonds and
thereby incurring losses.

23.     Westchester demanded indemnity from the Defendants, but no response was
received.

24.     Westchester was sued by various subcontractors on the bonds Westchester issued.
Westchester, pursuant to the terms of the Agreements of Indemnity, tendered its defense to SMC.
While SMC initially agreed to defend Westchester in these actions, SMC failed to defend
Westchester in these cases when their counsel was disbarred and SMC failed to obtain new
counsel, in breach of the Agreements of Indemnity.

25.     By reason of having executed the various performance and payments bonds and
lien discharge bonds and the terms of the Agreements of Indemnity, Westchester is entitled to
indemnification and exoneration of bond losses in the sum of $3,754,118.30 plus statutory

interest pursuant to the CPLR for which Defendants are liable to Westchester under the aforesaid Agreements of Indemnity.

## AS AND FOR A SECOND CAUSE OF ACTION
### (Indemnification for Fees and Expenses)

26.     Westchester repeats and re-alleges each and every allegation contained in paragraphs 1 through 25 as though herein at length set forth.

27.     Defendants executed Agreements of Indemnity whereby they each, jointly and severally, agreed to personally indemnify Westchester for all losses and/or expenses of whatsoever kind or nature, including interest, court costs and counsel fees.

28.     Plaintiff has incurred and will continue to incur fees, costs and expenses, including but not limited to legal fees and expenses.  Pursuant to Agreements of Indemnity, Defendants are obligated to exonerate, hold harmless, indemnify and keep indemnified the Surety from and against all losses, costs fees and expenses including court costs and attorney's fees.

## AS AND FOR A THIRD CAUSE OF ACTION
### (Injunction to require SMC to Complete and File Close-Out Documents)

29.     Westchester repeats and reiterates each and every allegation contained in paragraphs 1 through 28 as though herein at length set forth.

30.     One of the projects for which Westchester issued performance and payment bond, as well as numerous lien discharge bonds, was the SUNY-Farmingdale project (the "SUNY Project").

31.     In connection with the issuance of the lien discharge bonds, SMC executed an Assignment of Monies Due in favor of Westchester.

32. While the SUNY Project was eventually physically completed, SMC failed to file certain close out documents, including but not limited to a final requisition. SUNY will not release the balance of the contract monies absent the filing of a final requisition with all required close out documents.

33. Westchester, because it was not the contractor, cannot complete the remaining documentation. Upon information and belief, SMC's books and records contain the information needed to complete the final requisition.

34. Westchester has made repeated requests to SMC to complete and file the remaining documentation so that the remaining contract funds may be released to the Surety.

35. SMC has refused to complete and file the final requisition.

36. Westchester has no other way of obtaining the contract monies it is entitled to.

37. The Defendants directly benefit from any recovery by the Surety of the contract monies being held on the SUNY Project.

38. By reason of having executed the aforesaid bonds, and SMC's assignment of the SUNY Project contract monies, it is respectfully requested that the Court direct the officers of SMC to complete and submit all outstanding documentation due for the SUNY Project and provide any and all documents and information necessary for the close out of the SUNY Project and turn-over of contract monies remaining on the SUNY Project to Plaintiff.

**WHEREFORE**, Westchester Fire Insurance Company respectfully requests judgment as follows:

        i. on the First Cause of Action in the sum of $3,754,118.30 plus interest for performance and/or payment bond losses;

   ii.   on the Second Cause of Action to indemnify Plaintiff for all loss adjustment expenses, costs and fees including attorney's fees incurred and to be incurred by Plaintiff in a sum not yet determined;

  iii.   on the Third Cause of Action for an injunction directing SMC and Salvatore Coppola to complete and submit all documentation required to close out the SUNY Project and the payment of the remaining contract monies to Plaintiff; and,

  iv.   that Plaintiff have such other and further relief as the Court may deem just and proper, together with the costs and disbursements of this action.

Dated: New York, New York
       August 7, 2015

RICHARD B. DEMAS
GOTTESMAN, WOLGEL, FLYNN,
WEINBERG & LEE, P.C.
11 Hanover Square, 4th Floor
New York, NY 10005
*Attorneys for Plaintiff*
*Westchester Fire Insurance Company*
Telephone:  (212) 495-0100
Facsimile:  (212) 480-9797
Email: rdemas@gottesmanlaw.com

# EXHIBIT A



Insurance Company of North America
Indemnity Insurance Company of North America
ACE Insurance Company of Canada
Pacific Employers Insurance Company
Westchester Fire Insurance Company

**Agreement
of
Indemnity**

1.  This Agreement of Indemnity, made and entered into this  **7**  day of  **SEPTEMBER**  20 **05**  by the following individuals, partnerships and/or

2.  corporations:
    **SALVATORE COPPOLA   (PRESIDENT)   SMC CONSTRUCTION CORP.**
3.
4.  **SALVATORE COPPOLA   (INDIVIDUAL)**
5.
6.
7.
8.
9.  (individually and collectively hereinafter called Principals), who intend to assume the obligations of Principals, as noted in the Agreement, with respect to any surety bond, undertaking or
10. instrument of guarantee (hereinafter called Bonds) issued, before or after the date of this Agreement, by any one or more of the ACE Companies above named (individually and collectively
11. hereinafter called Surety) on behalf of such Principals and all of the above listed Principals (hereinafter called Indemnitors in this secondary capacity), jointly and severally, also intend to assume the
12. obligations of Indemnitors, as noted in the Agreement, with respect to any and all bonds issued by the Surety on behalf of any and all Principals.

## WITNESSETH

13.  **WHEREAS**, the Principals, in the performance of contracts and the fulfillment of obligations generally, whether in their own names solely or as co-adventurers with others, may desire, or be
14.  required to give or procure certain Bonds, and to renew, or continue or substitute the same from time to time; or new Bonds with the same or different penalties, and/or conditions, may be desired
15.  or required, in renewal, continuation, extension or substitution thereof; or the Principals or Indemnitors may request the Surety to refrain from cancelling said Bonds; and
16.  **WHEREAS**, at the request of the Principals and the Indemnitors and upon the express understanding that this Agreement of Indemnity be given, the Surety has executed or procured to be
17.  executed, and may from time to time hereafter execute or procure to be executed, said Bonds on behalf of the Principal; and
18.  **WHEREAS**, the Indemnitors have a substantial, material and beneficial interest in the obtaining of the Bonds or in the Surety's refraining from cancelling said Bonds.
19.  **NOW, THEREFORE**, in consideration of the premises the Principals and Indemnitors for themselves, their heirs, executors, administrators, successors and assigns (jointly and severally,
20.  hereby covenant and agree with the Surety, its successors and assigns, as follows:
21.  **FIRST: PREMIUMS** — The Principals and Indemnitors will pay to the Surety in such manner as may be agreed upon all premiums and charges of the Surety for the Bonds in accordance with its
22.  rate filings, its manual of rates, or as otherwise agreed upon, until the Principals or Indemnitors shall serve evidence satisfactory to the Surety of its discharge or release from the Bonds and all
23.  liability by reason thereof.
24.  **SECOND: INDEMNITY** — The Principals and Indemnitors shall exonerate, indemnify, and keep indemnified the Surety from and against any and all liability for losses and/or expenses of
25.  whatsoever kind or nature (including, but not limited to, interest, court costs, and counsel fees) and from and against any and all such losses and/or expenses which the Surety may sustain and
26.  incur: (1) By reason of having executed or procured the execution of the Bonds, (2) By reason of the failure of the Principals or Indemnitors to perform or comply with the covenants and conditions
27.  of this Agreement or (3) In enforcing any of the covenants and conditions of this Agreement. Payment by reason of the aforesaid causes shall be made to the Surety by the Principals and
28.  Indemnitors as soon as liability exists or is asserted against the Surety, whether or not the Surety shall have made any payment therefor. Such payment shall be equal to the amount of reserve set by
29.  the Surety. In the event of any payment by the Surety the Principals and Indemnitors further agree that in any accounting between the Surety and the Principals, or between the Surety and the
30.  Indemnitors, or either or both of them, the Surety shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters herein contemplated by this Agreement
31.  under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or
32.  expediency existed; and that the vouchers or other evidence of any such payments made by the Surety shall be prima facie evidence of the fact and amount of the liability to the Surety.
33.  **THIRD: ASSIGNMENT** — The Principals, the Indemnitors hereby consenting, will assign, transfer and set over, and do hereby assign, transfer and set over to the Surety, as collateral, to secure the
34.  obligations in any and all of the paragraphs of this Agreement and any other indebtedness and liabilities of the Principal to the Surety, whether incurred, the assignment in the case
35.  of each contract to become effective as of the date of the bond covering such contract, but only in the event of (1) any abandonment, forfeiture or breach of any contracts referred to in the Bonds or of any
36.  breach of any said Bonds; or (2) of any breach of the provisions of any of the paragraphs of this Agreement; or (3) of a default in discharging such other indebtedness or liabilities when due; or (4) of any
37.  assignment by the Principal for the benefit of creditors, or of the appointment, or of any application for the appointment, of a receiver or trustee for the Principal whether insolvent or not; or (5) of any
38.  proceeding which deprives the Principal of the use of any of the machinery, equipment, plant, tools or material referred to in section (b) of this paragraph; or (6) of the Principal's dying, absconding,
39.  disappearing, incompetency, being convicted of a felony, or imprisoned if the Principal be an individual: (a) All the right of the Principals in, and growing in any manner out of, all contracts referred to in
40.  the Bonds, or in, or growing in any manner out of the Bonds; (b) All the rights, title and interest of the Principal in and to all machinery, equipment, plant, tools and materials which are now, or may
41.  hereafter be, about or upon the site or sites of any and all of the contractual work referred to in the Bonds or elsewhere, including materials purchased for or chargeable to any and all contracts referred to
42.  in the Bonds, materials which may be in the process of construction, in storage elsewhere, or in transportation to any and all said sites; (c) All the rights, title and interest of the Principal in and to all
43.  subcontracts let or to be let in connection with any and all contracts referred to in the Bonds, and in and to all surety bonds supporting such subcontracts; (d) All actions, causes of actions, claims and
44.  demands whatsoever which the Principals may have or acquire against any subcontractor, laborer or materialman, or any person furnishing or agreeing to furnish or supply labor, material, supplies,
45.  machinery, tools, other equipment in connection with or on account of any and all contracts referred to in the Bonds; and against any surety or sureties of any subcontractor, laborer or materialman; (e)
46.  Any and all percentages retained and any and all sums that may be due or hereafter become due on account of any and all contracts referred to in the Bonds and all other contracts whether bonded or not
47.  in which the Principal has an interest.
48.  **FOURTH: UNIFORM COMMERCIAL CODE** — This Agreement shall constitute a Security Agreement to the Surety and also a Financing Statement, both in accordance with the provisions of the
49.  Uniform Commercial Code of every jurisdiction wherein such Code is in effect and may be so used by the Surety without in any way abrogating, restricting or limiting the rights of the Surety under this
50.  Agreement or under law, or in equity. A certain, photographic or other reproduction of this Agreement may be filed as a Financing Statement.
51.  **FIFTH: TAKEOVER** — In the event of any breach or default asserted by the obligee in any said Bonds, or the Principals have abandoned the work on or forfeited any contract or contracts covered by
52.  any said Bonds, or have failed to pay obligations incurred in connection therewith, or in the event of the death, disappearance, Principals' conviction for a felony, imprisonment, incompetency, insolvency,
53.  or bankruptcy of the Principals, or the appointment of a receiver or trustee for the Principals, or if any said Bonds is involved in any proceeding in the event of an assignment for the benefit of creditors of the Principals,
54.  or if any action is taken by or against the Principals under or by virtue of the National Bankruptcy Act, or should reorganization or arrangement proceedings be filed by or against the Principals under said
55.  Act, or if any action is taken by or against the Principals under the insolvency laws of any state, possession, or territory of the United States the Surety shall have the right, at its option and in its sole
56.  discretion and is hereby authorized, with or without exercising any other right or action conferred upon it by law or in the terms of this Agreement, to take possession of any part or all of the work under
57.  any contract or contracts covered by any said Bonds, and at the expense of the Principals and Indemnitors to complete or arrange for the completion of the same, and the Principals and Indemnitors shall
58.  promptly upon demand pay to the Surety all losses, and expenses so incurred.
59.  **SIXTH: CHANGES** — The Surety is authorized and empowered, without notice to or knowledge of the Indemnitors to assent to any change whatsoever in the Bonds, and/or any contracts
60.  referred to in the Bonds, and/or in the general conditions, plans and/or specifications accompanying said contracts, including, but not limited to, any change in the time for the completion of said
61.  contracts and to payments or advances thereunder before the same may be due, and to assent to or take any assignment or assignments, to execute or consent to the execution of any
62.  continuations, extensions or renewals of the Bonds and to execute any substitute or substitutes therefor, with the same or different conditions, provisions and obligee and with the same or larger
63.  or smaller penalties, it being expressly understood and agreed that the Indemnitors shall remain bound under the terms of this Agreement even though any such assent by the Surety does or might
64.  substantially increase the liability of said Indemnitors.
65.  **SEVENTH: ADVANCES** — The Surety is authorized and empowered to guarantee loans, to advance or lend to the Principals any money, which the Surety may see fit, for the purpose of any
66.  contracts referred to in, or guaranteed by the Bonds; and all money expended in the completion of any such contracts by the Surety, or lent or advanced from time to time to the Principals, or
67.  guaranteed by the Surety for the purposes of any such contracts, and all costs, and expenses incurred by the Surety in relation thereto, unless repaid with legal interest by the Principals to the
68.  Surety when due, shall be presumed to be a loss by the Surety for which the Principal and the Indemnitors shall be responsible notwithstanding that said money or any part thereof should not be
69.  so used by the Principals.
70.  **EIGHTH: BOOKS AND RECORDS** — At any time, and until such time as the liability of the Surety under any and all said Bonds is terminated, the Surety shall have the right to reasonable
71.  access to the books, records, and accounts of the Principals and Indemnitors; and any bank depository, materialman, supply house, or other person, firm, or corporation when requested by the
72.  Surety is hereby authorized to furnish the Surety any information requested including, but not limited to, the status of the work under contracts being performed by the Principals, the condition of
73.  the performance of such contracts and payments of accounts.
74.  **NINTH: DECLINE EXECUTION** — Unless otherwise specifically agreed in writing, the Surety may decline to execute any Bond and the Principals and Indemnitors agree to make no claim to
75.  the contrary in consideration of the Surety's receiving this Agreement; and if the Surety shall execute a Bid or Proposal Bond, it shall have the right to decline to execute any and all of the bonds that
76.  may be required in connection with any award that may be made under the proposal for which the Bid or Proposal Bond is given and such declinations shall not diminish or alter the liability that
77.  may arise by having executed the Bid or Proposal Bond.

78. **TENTH: NOTICE OF EXECUTION** — The Indemnitors hereby waive notice of the execution of such Bonds and of the acceptance of this Agreement, and the Principals and the Indemnitors
79. hereby waive all notice of any default, or any other act or acts giving rise to any claim under said Bonds, as well as notice of any and all liability of the Surety under said Bonds, and any and all
80. liability on their part hereunder, to the end and effect that the Principals and the Indemnitors shall be and continue liable hereunder, notwithstanding any notice of any kind to which they might have
81. been or entitled, and notwithstanding any defenses they might have been entitled to make.
82. **ELEVENTH: SETTLEMENTS** — The Surety shall have the right to adjust, settle or compromise any claim, demand, suit or judgment upon the Bonds, unless the Principals and the Indemnitors
83. shall request the Surety to litigate such claim or demand, or to defend such suit, or to appeal from such judgement, and shall deposit with the Surety, at the time of such request, each or collateral
84. satisfactory to the Surety in kind and amount, to be used in paying any judgment or judgments rendered or that may be rendered, with interest, costs, expenses and attorneys' fees, including those
85. of the Surety.
86. **TWELFTH: SURETIES** — In the event the Surety procures the execution of the Bonds by other sureties, or executes the Bonds with co-sureties, or reinsures any portion of said Bonds with
87. reinsuring sureties, then all the terms and conditions of this Agreement shall inure to the benefit of such other sureties, co-sureties and reinsuring sureties, as their interests may appear.
88. **THIRTEENTH: SUITS** — Separate suits may be brought hereunder as causes of action accrue, and the bringing of suit or the recovery of judgment upon any cause of action shall not prejudice or
89. bar the bringing of other suits upon other causes of action, whether theretofore or thereafter arising.
90. **FOURTEENTH: OTHER INDEMNITY** — The Principals and the Indemnitors shall continue to remain bound under the terms of this Agreement even though the Surety may have from time to
91. time heretofore or hereafter, with or without notice to or knowledge of the Principals and the Indemnitors, accepted or released other agreements of indemnity or collateral in connection with the
92. execution or procurement of said Bonds, from the Principals or Indemnitors or others, it being expressly understood and agreed by the Principal and the Indemnitors that any and all other rights
93. which the Surety may have or acquire against the Principals and the Indemnitors and/or others under any such other or additional agreements of indemnity or collateral shall be in addition to, and
94. not in lieu of, the rights afforded the Surety under this Agreement.
95. **FIFTEENTH: INVALIDITY** — In case any of the parties mentioned in this Agreement fail to execute the same, or in case the execution hereof by any of the parties be defective or invalid for any
96. reason, such failure, defect or invalidity shall not in any manner affect the validity of this Agreement or the liability hereunder of any of the parties executing the same, but each and every party so
97. executing shall be and remain fully bound and liable hereunder to the same extent as if such failure, defect or invalidity had not existed. It is understood and agreed by the Principals and
98. Indemnitors that the rights, powers, and remedies given the Surety under this Agreement shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which the
99. Surety may have or acquire against the Principals and Indemnitors or others whether by the terms of any agreement or by operation of law or otherwise.
100. **SIXTEENTH: ATTORNEY IN FACT** — The Principals and Indemnitors hereby irrevocably nominate, constitute, appoint and designate the Surety as their attorney-in-fact with the right, but not
101. the obligation, to exercise all the rights of the Principals and Indemnitors assigned, transferred and set over to the Surety in this Agreement, and in the name of the Principals and Indemnitors to
102. make, execute, and deliver any and all additional or other assignments, documents or papers deemed necessary and proper by the Surety in order to give full effect not only to the intent and
103. meaning of the within assignments, but also to the full protection intended to be herein given to the Surety under all other provisions of this Agreement. The Principals and Indemnitors hereby ratify
104. and confirm all acts and actions taken and done by the Surety and such attorney-in-fact.
105. **SEVENTEENTH: TERMINATION** — This Agreement may be terminated by the Principals or Indemnitors upon twenty days' written notice sent by registered mail to the Surety at its home office at
106. 1601 Chestnut Street, Philadelphia, Pennsylvania 19103, but any such notice of termination shall not operate to modify, bar, or discharge the Principals or the Indemnitors as to the Bonds that may
107. have been theretofore executed.
108. **EIGHTEENTH:** This Agreement may not be changed or modified orally. No change or modification shall be effective unless made by written endorsement executed to form a part hereof.

109. NINETEENTH: _____
110. _____
111. _____
112. _____
113. _____
114. _____
115. _____

116. IN WITNESS WHEREOF, we have signed and sealed the day and year first above written.
ATTEST OR WITNESS:

SMC CONSTRUCTION CORP.
(Full Name & Address of Principal/Indemnitor)

77 GAZZA BLVD.
EAST FARMINGDALE, NEW YORK 11735

By: X _____ (Seal)
SALVATORE COPPOLA   (PRESIDENT)

(Full Name & Address of Principal/Indemnitor)


SALVATORE COPPOLA
8 WILD RUN   SMITHTOWN, NEW YORK - 11787

By: _____ (Seal)
SALVATORE COPPOLA   (INDIVIDUAL)

(Full Name & Address of Principal/Indemnitor)

By: _____ (Seal)

### INDIVIDUAL ACKNOWLEDGMENT

State of _____ } ss.:
County of _____
On this _____ day of _____, in the year 20____, before me personally comes _____

to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that _____ he
executed the same.

_____
(Signature of Notary Public)

My Commission expires _____

### INDIVIDUAL ACKNOWLEDGMENT

State of NEW YORK } ss.:
County of SUFFOLK
On this 7 day of SEPTEMBER, in the year 20 05, before me personally comes
SALVATORE COPPOLA

to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that _____ he
executed the same.

ROSANNE CALLAHAN
NOTARY PUBLIC STATE OF NEW YORK
NO. 01CA602444
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES MAY 10 2007

Rosanne Callahan
(Signature of Notary Public)

My Commission expires _____

### INDIVIDUAL ACKNOWLEDGMENT

State of _____ } ss.:
County of _____
On this _____ day of _____, in the year 20____, before me personally comes _____

to me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that _____ he
executed the same.

_____
(Signature of Notary Public)

My Commission expires _____

### INDIVIDUAL ACKNOWLEDGMENT

State of _____ } ss.:
County of _____
On this _____ day of _____, in the year 20____, before me personally comes _____

me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that _____ he
executed the same.

_____
(Signature of Notary Public)

My Commission expires _____

### INDIVIDUAL ACKNOWLEDGMENT

State of _____ } ss.:
County of _____
On this _____ day of _____, in the year 20____, before me personally comes _____

me known and known to me to be the person(s) who (is) (are) described in and who executed the foregoing instrument, and acknowledge(s) to me that _____ he
executed the same.

_____
(Signature of Notary Public)

My Commission expires _____

## PARTNERSHIP ACKNOWLEDGMENT

State of _____ } ss.:
County of _____
   On this _____ day of _____, in the year 20____, before me personally comes _____

a member of the co-partnership of _____
to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledged to me that he executed the same as and for the act and deed of the said co-partnership.

_____
(Signature of Notary Public)

My Commission expires _____

## PARTNERSHIP ACKNOWLEDGMENT

State of _____ } ss.:
County of _____
   On this _____ day of _____, in the year 20____, before me personally comes _____

a member of the co-partnership of _____
to me known and known to me to be the person who is described in and who executed the foregoing instrument, and acknowledges to me that he executed the same as and for the act and deed of the said co-partnership.

_____
(Signature of Notary Public)

My Commission expires _____

## CORPORATE ACKNOWLEDGMENT

State of NEW YORK } ss.:
County of SUFFOLK
   On this 7 day of SEPTEMBER, in the year 2005, before me personally comes
SALVATORE COPPOLA _____ that he is the
to me known, who being by me duly sworn, deposes and says that he resides in the City of SMITHTOWN NEW YORK 11787
PRESIDENT _____ of the SMC CONSTRUCTION CORP. _____ the corporation described in and which
executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

ROSANNE CALLAHAN
NOTARY PUBLIC STATE OF NEW YORK
NO. 01CA802444
QUALIFIED IN SUFFOLK COUNTY
COMMISSION EXPIRES MAY 10 2007

_Rosanne Callahan_
(Signature of Notary Public)

My Commission expires _____

## CORPORATE ACKNOWLEDGMENT

State of _____ } ss.:
County of _____
   On this _____ day of _____, in the year 20____, before me personally comes _____
_____ that he is the
to me known, who being by me duly sworn, deposes and says that he resides in the City of _____
_____ of the _____ the corporation described in and which
executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)

My Commission expires _____

## CORPORATE ACKNOWLEDGMENT

State of _____ } ss.:
County of _____
   On this _____ day of _____, in the year 20____, before me personally comes _____
_____ that he is the
to me known, who being by me duly sworn, deposes and says that he resides in the City of _____
_____ of the _____ the corporation described in and which
executed the foregoing instrument; that he knows the seal of the said corporation; that the seal affixed to the said instrument is such corporate seal; that it was so affixed by the order of the Board of Directors of said corporation, and that he signed his name thereto by like order.

_____
(Signature of Notary Public)

My Commission expires _____

**EXHIBIT B**



## AGREEMENT OF INDEMNITY

This Agreement of Indemnity ("AGREEMENT"), is made and entered into by the following individuals, partnerships and/or corporations SMC Construction Corp. 77 Gazza Boulevard, Farmingdale, NY 11735

as PRINCIPAL(s) and

INDEMNITOR(s)        Social Security or EIN Number        Mailing Address
Diamante Realty, LLC                                            77 Gazza Boulevard, Farmingdale, NY 11735
Salvatore Coppola                                              8 Wild Run, Smithtown, NY 11787

as INDEMNITOR(s) and Westchester Fire Insurance Company, as SURETY.

### WITNESSETH

WHEREAS, PRINCIPAL(s), in the performance of contracts and the fulfillment of obligations generally, whether solely in its own name or as co-venturer with others, may desire, or be required to give or procure certain BOND(s), and to renew, or continue or substitute the same from time to time with the same or different BOND amounts, and/or conditions or to refrain from canceling said BOND(s);

WHEREAS, at the request of PRINCIPAL(s) and/or INDEMNITOR(s) or both and upon the express understanding that this AGREEMENT should be given, SURETY has executed or caused to be executed, and may from time to time hereafter execute or cause to be executed, said BOND(s) on behalf of the PRINCIPAL(s);

WHEREAS, PRINCIPAL(s) and INDEMNITOR(s) have a substantial, material and beneficial interest in the obtaining, renewing, continuing or substituting of BOND(s); and

WHEREAS, SURETY has relied upon and will continue to rely upon the representations of PRINCIPAL(s) and INDEMNITOR(s) as to their character, identity, control, beneficial and legal ownership, financial condition and existence in procuring or executing BOND(s).

NOW THEREFORE, in consideration of the above stated premises, and of other good and valuable consideration, the receipt of which is hereby acknowledged, PRINCIPAL(s) and INDEMNITOR(s) for themselves, their heirs, executors, administrators, successors and assigns, jointly and severally, hereby covenant and agree with SURETY, its successors and assigns, as follows:

### DEFINITIONS

FIRST: Where they appear in this AGREEMENT and any addenda hereto, the following terms are defined as set forth in this paragraph:

"BOND(s)" means an undertaking or a contract of suretyship, guaranty or indemnity, or an agreement, consent or letter to provide such an undertaking or contract, and the continuation, extension, alteration, renewal or substitution of such an undertaking, contract, agreement, consent or letter, whether with the same or different amounts or conditions, executed or procured by SURETY before or after the date of this AGREEMENT (excluding at the option of SURETY any BOND(s) which are written by SURETY in reliance upon another valid and enforceable agreement of indemnity in favor of SURETY).

"CONTRACT(s)" means an agreement executed between PRINCIPAL(s) and a third party, together with all associated documents (including, but not limited to, general and special conditions, specifications and drawings) or an undertaking made, obligation or duty assumed, either statutory or otherwise, for which SURETY executes or procures the execution of a BOND(s).

"EVENT OF DEFAULT" means any one or more of the following:

A. Any notice of default by an obligee on any BOND(s) due to abandonment, forfeiture, breach of, or failure, refusal or inability to perform any CONTRACT or obligation contained therein or in the BOND(s) itself, whether actual or alleged;
B. Any failure, delay, refusal or inability of PRINCIPAL(s) to pay claims, bills or other indebtedness incurred in, or in connection with the performance of any CONTRACT;
C. The failure to perform, or comply with the terms, covenants or obligations in this AGREEMENT;
D. The failure to pay or discharge, when due, all indebtedness of PRINCIPAL(s) and/or INDEMNITOR(s) to SURETY;
E. An assignment by PRINCIPAL(s) for the benefit of creditors, or the appointment or an application by PRINCIPAL(s) for the appointment of a receiver or trustee for PRINCIPAL(s) or its property, solvent or not, or if proceedings for the appointment of a receiver for liquidation, reorganization or arrangement of PRINCIPAL(s) shall be initiated by others;
F. If PRINCIPAL or INDEMNITOR is an individual, the death, disappearance, declaration of incompetence, conviction of a felony, imprisonment, or, if PRINCIPAL(s) and/or INDEMNITOR(s) is not an individual, any change in character, identity, control, arrangement, legal or beneficial ownership or existence of such PRINCIPAL(s) and/or INDEMNITOR(s);
G. Any proceeding or the exercise of any rights by any individual or entity which deprives or impairs the PRINCIPAL's use of its plant, machinery, equipment, plan, drawings, tools, supplies or materials;

Contract Indemnity Form (Ed: 05/01/06)

H.   In the event that CONTRACT(s), or any portion thereof, relates to the development of real property or construction of improvements upon real property: (i) the failure of PRINCIPAL(s) to pay for labor and materials ordered or used in connection with such development or construction of improvements, (ii) the diversion or non-use by PRINCIPAL(s) of loan funds, equity funds or materials intended by any lender, equity contributor or supplier of such funds or materials to be used and which are needed to perform the CONTRACT(s); or (iii) the voluntary or involuntary cessation or suspension of work required to be performed by PRINCIPAL(s) in connection with the CONTRACT(s);

I.   The failure of PRINCIPAL(s), INDEMNITOR(s) to promptly furnish accurate, complete and current financial statements upon request of SURETY or the furnishing of a financial statement which contains any material misstatement or misrepresentation whether intentional or unintentional;

J.   Any suspension, revocation or other material adverse change in the status of any license of PRINCIPAL(s) with any applicable licensing board or agency that is required to perform the CONTRACT(s) or discharge any obligation under any BOND(s); and

K.   The occurrence of any event other than specified in A. through J. herein which, in the SURETY's sole opinion, may expose SURETY to loss, cost or expense including, but not limited to, a material adverse change in the financial condition of the PRINCIPAL(s) and/or INDEMNITOR(s).

"PRINCIPAL(s)" means any individual or entity for which SURETY executes BOND(s) including any one, combination of, or all of the named individuals, partnerships, or firms or corporations set forth above, any of their present or future subsidiaries, affiliates, whether a corporation, partnership or other entity, their successors in interest, whether acting alone or in joint venture with others not named herein, including any such individual or entity for which SURETY executes BOND(s) or any unrelated individual or entity for which SURETY executes BOND(s) at the request of any INDEMNITOR(s).

"SURETY" means Westchester Fire Insurance Company and its successors, assigns, affiliates, associates and subsidiary companies.

### NOTICE TO SURETY OF ANTICIPATED CHANGE IN NATURE OF PRINCIPAL(s)/INDEMNITOR(s)

SECOND: Written notice must be given by PRINCIPAL(s) and/or INDEMNITOR(s) at the earliest practical time of any anticipated change or negotiations entered into by PRINCIPAL(s) or INDEMNITOR(s) for any anticipated change in the character or identity of PRINCIPAL(s) or INDEMNITOR(s), or of a change of 5% or more in the beneficial or legal ownership of the stock of PRINCIPAL(s) and/or INDEMNITOR(s). Upon receipt of said notice, SURETY shall have the right to examine the books and records and other documents and information pursuant to the Sixteenth paragraph hereof.

### INDEMNITY AND HOLD HARMLESS

THIRD:   PRINCIPAL(s) and INDEMNITOR(s) shall exonerate, hold harmless, indemnify and keep indemnified SURETY from and against any and all claims, demands and liability for losses, costs, and expenses of whatsoever kind or nature, including but not limited to court costs, counsel fees, costs of investigation, consultant fees, accountant fees, engineer or construction management fees, together with interest thereon at the maximum rate allowed by law, which SURETY may sustain or incur by reason of or in consequence of the:

A.   Execution or procurement of the execution of BOND(s);
B.   Failure by PRINCIPAL(s) or INDEMNITOR(s) to perform or comply with any of the covenants or conditions of this AGREEMENT;
C.   Any Event of Default herein;
D.   Enforcement of any covenant of this AGREEMENT;
E.   Performance of any investigation, attempt or attainment of any release in connection with any BOND(s) or any loss or unpaid premium in connection with any BOND(s);
F.   Prosecution or defense of any action or claim in connection with any BOND(s), whether SURETY, at its own discretion, elects to employ counsel of its own selection or permits or requires PRINCIPAL(s) or INDEMNITOR(s) to make arrangements for SURETY's legal representation; and
G.   Attempt to recover losses or expenses paid or incurred in connection with this AGREEMENT, CONTRACT(s) and/or BOND(s).

Payment shall be made to SURETY by the PRINCIPAL(s) and/or INDEMNITOR(s) as soon as liability exists or is asserted against SURETY, whether or not SURETY shall have made any payment therefore. Such payment shall be equal to whatever amount SURETY, in its judgment, shall deem sufficient to protect it from loss. SURETY shall have the right to use the payment or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of this AGREEMENT.

In the event of payment by SURETY, SURETY shall be entitled in any accounting with PRINCIPAL(s) or INDEMNITOR(s) to reimbursement for any and all disbursements made by it in good faith in and about the matters contemplated by this AGREEMENT under the belief that it was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed. Vouchers or other evidence of any such payments made by SURETY shall be prima facie evidence of the fact and amount of liability to SURETY. PRINCIPAL(s) and INDEMNITOR(s) shall pay to SURETY interest on all disbursements made by SURETY at the maximum rate permitted by law calculated from the date of each disbursement.

### RESERVE-DEPOSIT

FOURTH:   If for any reason the SURETY shall deem it necessary to establish or to increase a reserve to cover any possible liability or loss for which the PRINCIPAL(s) and INDEMNITOR(s) will be obligated to indemnify SURETY under the terms of this AGREEMENT, PRINCIPAL(s) and INDEMNITOR(s) will deposit with SURETY, immediately upon demand, a sum of money equal to such reserve and any increase thereof as collateral security to SURETY for such liability or loss.

SURETY shall have the right to use such deposit, or any part thereof, in payment or settlement of any liability, loss or expense for which PRINCIPAL(s) and/or INDEMNITOR(s) would be obligated to indemnify SURETY under the terms of this AGREEMENT. SURETY shall have no obligation to invest, or to provide a return on the deposit. PRINCIPAL(s) and INDEMNITOR(s) shall be entitled to the return of any unused portion of the deposit upon termination of the liability of SURETY on the BOND(s) and the performance by PRINCIPAL(s) and INDEMNITOR(s) under the terms of this AGREEMENT.

SURETY's demand shall be sufficient if sent by REGISTERED or CERTIFIED MAIL to the PRINCIPAL(s) and INDEMNITOR(s) at the addresses stated herein, or at the addresses last known to SURETY, whether or not such demand is actually received.

### ADVANCES

FIFTH:   INDEMNITOR(s) hereby authorize and empower SURETY, within SURETY's sole discretion, to guarantee loans, extend SURETY credit, advance, or to lend PRINCIPAL(s) any money, which SURETY may see fit for the purpose of completing CONTRACT(s) or discharging obligations under BOND(s) including such overhead as might be necessary and all such guarantees, credit, advances or loans as well as all costs and expenses incurred by SURETY in relation thereto shall be presumed to be a loss for which PRINCIPAL(s) and INDEMNITOR(s) shall be responsible under this AGREEMENT, notwithstanding that said money or any part thereof should not be used by PRINCIPAL(s).

Contract Indemnity Form (Ed: 05/01/06)

## TRUST FUND

**SIXTH:** All payments received for or on account of any CONTRACT(s) shall be held in a trust fund to assure the payment of obligations incurred or to be incurred in the performance of any CONTRACT(s) and for labor, materials, and services furnished in the prosecution of the work under any CONTRACT(s) or any extensions or modifications thereto. All monies due and to become due under any CONTRACT(s) are also trust funds, whether in the possession of PRINCIPAL(s), INDEMNITOR(s) or otherwise. The trust funds shall be for the benefit and payment of all obligations for which SURETY may be liable under any BOND(s). The trust funds shall inure to the benefit of SURETY for any liability or loss it may have or sustain under any BOND(s), and this AGREEMENT and declaration constitute notice of such trust. The trust funds, unless otherwise restricted or regulated by state or local laws, can be commingled with other funds, but the trust fund nature and purpose asstrated in this paragraph shall not be modified nor waived by this commingling provision.

## FUNDS CONTROL

**SEVENTH:** Upon demand by SURETY, PRINCIPAL(s) shall implement the trust or trusts provided for in the SIXTH paragraph of this AGREEMENT by the creation of an account or accounts with a bank or similar depository designated by SURETY, which account or accounts shall be designated as a trust account or accounts for the deposit of such trust funds, and shall deposit therein all monies received for or on account of any CONTRACT(s). Withdrawals from such accounts shall be by check or similar instrument signed by a representative of SURETY. Said trust shall terminate on the payment of all the obligations under the CONTRACT(s) for which the account was created.

## ASSIGNMENT

**EIGHTH:** With respect to each BOND(s) executed by SURETY, PRINCIPAL(s) (with INDEMNITOR(s) hereby consenting), assigns, transfers and conveys to SURETY but subject to the trust created herein:

   A.    All monies due or to become due to PRINCIPAL(s) arising out of or in any way related to CONTRACT(s) covered by BOND(s), including but not limited to, progress payments, deferred payments, retained percentages, compensation for extra work, undisbursed loan funds, deposit or reserve accounts, and all collateral pledged by PRINCIPAL(s) and INDEMNITOR(s) to third parties in connection with the CONTRACT(s) or BOND(s);

   B.    All of the rights of PRINCIPAL(s) in, or arising in any manner out of, all CONTRACT(s) or BOND(s);

   C.    All of the rights, title and interest of the PRINCIPAL(s) in and to all machinery, equipment, plant, tools and materials which are now, or may hereafter be, about or upon the site or sites of any and all of the work under CONTRACT(s) or BOND(s) or elsewhere, including materials purchased for or chargeable to any and all such CONTRACT(s) or BOND(s), which may be in the process of manufacture or construction, in storage elsewhere, or in transportation to any and all of said sites;

   D.    All of the rights, title and interest of the PRINCIPAL(s) in and to all subcontracts let or to be let in connection with CONTRACT(s) or BOND(s), and in and to all SURETY bonds in favor of PRINCIPAL(s) as oblige relating to such CONTRACT(s) or BOND(s);

   E.    All of the rights, title and interest of PRINCIPAL(s) in and to any actions, causes of action, claims, demands or proceeds of such actions, causes of action, claims or demands whatsoever which PRINCIPAL(s) may have or acquire against any party in connection with the CONTRACT(s) including but not limited to those against obligee on BOND(s) design professionals, subcontractors, laborers or materialmen or any person furnishing or agreeing to furnish or supply labor, material, supplies, machinery, tools, inventory or other equipment in connection with or on account of any CONTRACT(s) and against any SURETY or sureties of any obligee, subcontractor, laborer, or materialmen;

   F.    All monies due or to become due to PRINCIPAL(s) or INDEMNITOR(s) on any policy of insurance relating to any claims or suits arising out of CONTRACT(s) or BOND(s) including, but not limited to, claims or suits under builders risk, fire or employee dishonesty policies, including premium refunds;

   G.    Any and all rights, title and interest in or use of any patent, copyright or trade secret which is or may be necessary for completion of CONTRACT(s); and

   H.    The above assignment rights are in addition to and not in substitution of any other rights of SURETY arising by operation of law or otherwise.

The above assignments shall become effective as of the date of this AGREEMENT or the date of the BOND(s) whichever occurs first. SURETY agrees to forbear exercising the rights granted to it under this Eighth paragraph until the occurrence of an EVENT OF DEFAULT. Upon the occurrence of an EVENT OF DEFAULT, PRINCIPAL(s) authorizes and empowers SURETY, or any person or persons designated by SURETY, to execute in the name of PRINCIPAL(s) any instruments deemed necessary or desirable by SURETY to provide absolute title to SURETY of any funds, property and rights as are hereby assigned, transferred or conveyed, and hereby authorize SURETY or any person or persons designated by SURETY to take immediate possession of such funds, property and rights, to collect such sums as may be due and to endorse, in the name of the PRINCIPAL(s) and to collect any checks, drafts, warrants and or other instruments made and issued in payment of such sums.

SURETY is authorized to assert and prosecute any right or claim assigned in this AGREEMENT in the name of PRINCIPAL(s) and to compromise and settle such right or claim on such terms as it considers reasonable.

SURETY may sell any property assigned to it pursuant to this AGREEMENT at public or private sale, with or without notice, at any time or place, without incurring liability of any kind to PRINCIPAL(s) or INDEMNITOR(s).

## SETTLEMENTS

**NINTH:** SURETY shall have the exclusive right in its name or in the name of PRINCIPAL(s) or INDEMNITOR(s) to adjust, settle or compromise any claim, counterclaim, demand, suit or judgment involving any BOND(s) or to take whatever action it may deem necessary, expedient or appropriate. SURETY's determination as to whether any such claim, counterclaim, demand, suit or judgment should be settled shall be binding and conclusive upon PRINCIPAL(s) and INDEMNITOR(s). The vouchers or other evidence of any such payments made by SURETY shall constitute prima facie evidence of the fact and amount of liability of PRINCIPAL(s) and INDEMNITOR(s) to SURETY.

## PERFECTION OF SECURITY INTEREST

**TENTH:** This AGREEMENT shall constitute a Security Agreement and a Financing Statement for the benefit of SURETY in accordance with the Uniform Commercial Code and any similar statute and may also be used by SURETY without in any way abrogating, restricting or limiting the rights of SURETY. SURETY may add such schedules to this AGREEMENT describing specific items of collateral covered hereunder as shall be necessary. For the purpose of recording this AGREEMENT, a photocopy of this AGREEMENT acknowledged before a Notary Public as being a true copy hereof shall be regarded as an original.

Contract Indemnity Form (ISG: 05/01/96)

## ATTORNEY-IN-FACT

**ELEVENTH:** PRINCIPAL(s) and INDEMNITOR(s) hereby irrevocably nominate, constitute designate and appoint SURETY or any person or persons designated by SURETY as attorney in fact with the right to exercise all of the rights assigned, transferred and set over to SURETY by this AGREEMENT including, but not limited to Financing Statements under the Uniform Commercial Code, disbursement of loan proceeds, endorsement of checks or other instruments payable to PRINCIPAL(s) and/or INDEMNITOR(s) under CONTRACT(s) and to execute and deliver any and all additional instruments or documents deemed necessary or desirable by SURETY:

   A.   To vest in SURETY absolute title to any and all monies, property and rights hereby assigned, and
   B.   To provide the protection and rights to SURETY contemplated by all of the provisions of this AGREEMENT.

PRINCIPAL(s) and INDEMNITOR(s) hereby ratify and confirm all acts and actions taken and done by SURETY as such Attorney-in-Fact.

## TAKEOVER

**TWELFTH:** Upon occurrence of any EVENT OF DEFAULT, SURETY, at its discretion, shall have the right, but not the obligation conferred upon it by law or by the terms of this AGREEMENT, to take possession of any part or all of the work under CONTRACT(s), at the expense of PRINCIPAL(s) and INDEMNITOR(s), to complete or arrange for completion of the work, and to take such steps which, at its discretion, SURETY may deem advisable or necessary to obtain SURETY's release or to avoid or mitigate loss.

In the event that the CONTRACT(s) and/or BOND(s) relate to the performance of a subdivision agreement between PRINCIPAL(s) and a public entity, and an EVENT OF DEFAULT occurs, SURETY shall have the right, but not the obligation, to revert to or regain the real property which is the subject of this subdivision improvement agreement.

## DECLINATION OF SURETYSHIP

**THIRTEENTH:** SURETY may decline to execute any BOND(s) applied for and the PRINCIPAL(s) and INDEMNITOR(s) shall have no cause of action against SURETY in consequence of its failure to execute any BOND(s). If SURETY executes or provides a bid bond or proposal bond, SURETY retains the right to decline to execute the final bond (including, but not limited to, performance, payment or maintenance bonds) that may be required in connection with any award that may be made under the bid or proposal. Evidence of custom and usage will have no bearing on SURETY's right to decline suretyship under this paragraph.

## NOTICE OF EXECUTION

**FOURTEENTH:** INDEMNITOR(s) hereby waive notice of the execution of any BOND(s) and of the acceptance of this AGREEMENT by SURETY. PRINCIPAL(s) and INDEMNITOR(s) hereby waive all notice of any default, or any other act or acts giving rise to any claim under said BOND(s), as well as notice of any and all liability of SURETY under said BOND(s). PRINCIPAL(s) and INDEMNITOR(s) shall continue to be bound under this AGREEMENT, notwithstanding lack of notice to which they may have been otherwise entitled and notwithstanding any defenses that they would have been entitled to raise.

## RIGHT TO INFORMATION

**FIFTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) will furnish SURETY such information as it may request from time to time concerning the financial condition of PRINCIPAL(s) and INDEMNITOR(s), the status of work under any CONTRACT(s), and/or the payment of obligations in connection therewith.

## BOOKS AND RECORDS

**SIXTEENTH:** At any time during this AGREEMENT and until such time as the liability of SURETY under all BOND(s) is terminated and SURETY is fully reimbursed all amounts due under this AGREEMENT, SURETY shall have the right of access to the books, records, accounts, documents, computer software, and other computer stored information of PRINCIPAL(s) and INDEMNITOR(s), wherever located, for the purpose of inspection, copying or reproduction. Any financial institution, depository, warehouse, supply house, or other person, firm or corporation, when requested by SURETY, is hereby authorized and required to furnish SURETY any and all information requested including, but not limited to: (i) the status of the work under any CONTRACT(s) being performed by PRINCIPAL(s); (ii) the condition of performance of any CONTRACT(s); (iii) payments or pending payments of accounts including undisbursed loan proceeds; and (iv) full information about all bank accounts and loans and any collateral deposited in connection therewith. Upon SURETY's request, PRINCIPAL(s) and INDEMNITOR(s) shall immediately deliver to SURETY, or its designee, at a time and place and in a manner determined by SURETY, such books, records, accounts, documents, computer software and other computer stored information, and contracts in whatever form, as and when requested by SURETY.

## PREMIUMS

**SEVENTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) shall pay all premiums and charges of SURETY for the BOND(s) and for all policies of insurance whether procured from SURETY or from other insurance companies until PRINCIPAL(s) and INDEMNITOR(s) shall serve evidence satisfactory to SURETY of its discharge or release from all BOND(s) and all liability by reason thereof. The failure of PRINCIPAL(s) or INDEMNITOR(s) to pay premiums shall not constitute a defense to an action under this AGREEMENT.

## DISCHARGE FROM SURETYSHIP

**EIGHTEENTH:** PRINCIPAL(s) and INDEMNITOR(s) will, upon request of SURETY, take action to procure the discharge of SURETY from any BOND(s) and from any liability thereof. SURETY may, at any time take such action as it deems necessary or proper to obtain its release from any and all liability under any BOND(s). Upon discharge or release, SURETY shall return to PRINCIPAL(s) any portion of premium paid which is unearned as a result of such discharge provided that PRINCIPAL(s) is not indebted to SURETY for any other reason.

## SURETYSHIP COVERED

**NINETEENTH:** This AGREEMENT applies to all BOND(s) executed or procured by SURETY for the PRINCIPAL(s) in his own name or as co-venturer with others, whether prior to or subsequent to the execution and delivery of this AGREEMENT and from time to time until this AGREEMENT is terminated in accordance with its terms.

Contract Indemnity Form (Ed: 05/01/06)

## PROTECTION OF OTHER SURETIES

**TWENTIETH:** If SURETY procures the execution of any BOND(s) by other sureties or executes the BOND(s) with co-sureties, or reinsures any portion of said BOND(s) with reinsuring sureties, then all the terms and conditions of this AGREEMENT shall inure to the benefit, as their interests may appear, of such other sureties, co-sureties and reinsurers who shall have the right to maintain an action or actions on this AGREEMENT to enforce their rights hereunder.

## WAIVER OF HOMESTEAD RIGHT

**TWENTY FIRST:** PRINCIPAL(s) and/or INDEMNITOR(s) waive, so far as their respective obligations under this AGREEMENT are concerned, all rights to claim any of their property, including their respective homesteads, as exempt from levy, execution or sale or other legal process under the laws of any state, territory or possession of the United States.

## NOTICE TO SURETY

**TWENTY SECOND:** PRINCIPAL(s) and INDEMNITOR(s) shall promptly provide all written notices to SURETY required in this AGREEMENT at 436 Walnut Street, WA10P, Philadelphia PA 19106, Attention: Surety Department, including but not limited to the following events:

A. Notice by any obligee on any BOND(s) for PRINCIPAL(s) that PRINCIPAL(s) is in default on any BOND(s) and/or CONTRACT(s) or has failed or refused to perform any CONTRACT(s);

B. Notice by any obligee on any BOND(s) for PRINCIPAL(s) that PRINCIPAL(s) cure its performance or show cause as to the reason(s) PRINCIPAL(s) should not be terminated or defaulted on any BOND(s) or CONTRACT(s); and

C. Notice by obligee that there has been a material change in the CONTRACT(s) in connection with the scope of work, the contract amount, the time or method for completion of such CONTRACT(s).

## CONSENT TO CHANGES

**TWENTY THIRD:** SURETY is authorized, without notice to or knowledge of PRINCIPAL(s) or INDEMNITOR(s), to assent to any change whatsoever in any BOND(s) and any CONTRACT(s) including, but not limited to, any change in the time for completion of CONTRACT(s) and for payments or advances thereunder, to assent to or to take any assignment or assignments, to execute or consent to execution of any continuations, extensions, renewals, enlargements, modifications, changes or alterations of any BOND(s) and to execute any substitute or substitutes therefore, with the same or different conditions, provisions and obligees and with the same or larger penalties, and PRINCIPAL(s) and INDEMNITOR(s) shall remain bound under the terms of this AGREEMENT even though any such assent by SURETY does or may substantially increase the liability of PRINCIPAL(s) and INDEMNITOR(s).

## SUBORDINATION OF INDEMNITORS

**TWENTY FOURTH:** PRINCIPAL(s) and INDEMNITOR(s) waive and subordinate all rights of indemnity, subrogation and contribution of each against the other until all obligations to SURETY under this AGREEMENT, at law or in equity, have been fully satisfied.

## ELECTION OF REMEDIES

**TWENTY FIFTH:** All rights and remedies of SURETY under this AGREEMENT shall be cumulative, and the exercise of or failure to exercise, any right or remedy at anytime shall not be an election of remedy or a waiver of any other right or remedy. Failure of SURETY to pursue any remedy against any one or more of PRINCIPAL(s) and INDEMNITOR(s) shall not release or waive any right against any other of the PRINCIPAL(s) and/or INDEMNITOR(s).

## OTHER INDEMNITY

**TWENTY SIXTH:** The rights, powers and remedies given to SURETY by this AGREEMENT shall be and are in addition to, and not in lieu of, any and all other rights, powers, and remedies which SURETY may have or acquire against PRINCIPAL(s) and INDEMNITOR(s) or others whether by the terms of any other agreement, by operation of law or otherwise.

PRINCIPAL(s) and INDEMNITOR(s) shall continue to remain bound under this AGREEMENT even though SURETY may have, at any time either prior to or after the execution of this AGREEMENT, with or without knowledge of PRINCIPAL(s) and INDEMNITOR(s), accepted or released other agreements of indemnity from PRINCIPAL(S), INDEMNITOR(s) or others or released collateral held in connection with the execution of BOND(s) or other policies of insurance.

## PARTIAL INVALIDITY OR EXECUTION

**TWENTY SEVENTH:** If any of the persons named herein as PRINCIPAL(s) and INDEMNITOR(s) fails to execute this AGREEMENT or if the execution hereof by any of the PRINCIPAL(s) and INDEMNITOR(s) shall be defective or invalid for any reason, such failure, defect or invalidity shall not in any manner diminish or otherwise affect the obligation or liability hereunder of any other PRINCIPAL(s) and INDEMNITOR(s).

Failure of the PRINCIPAL(s) to sign any BOND(s) shall not relieve the PRINCIPAL(s) and INDEMNITOR(s) of liability under this AGREEMENT.

If any provision or provisions of this AGREEMENT are held to be void or unenforceable under the laws of the place governing its construction or enforcement, this AGREEMENT shall not be void or unenforceable thereby but shall continue in effect and be enforceable as though such provision or provisions were omitted.

## SEPARATE ACTION SETTLEMENT

**TWENTY EIGHTH:** Separate suits may be brought on this AGREEMENT against any and all of the PRINCIPAL(s) and INDEMNITOR(s) and the bringing of the suit or the recovery of a judgment upon any cause of action shall not prejudice or bar the bringing of another suit or suits at any time.

SURETY is hereby expressly authorized to settle any claim based upon this AGREEMENT with any one or more of PRINCIPAL(s) and/or INDEMNITOR(s) individually, and such settlement or compromise shall not affect the liability of any of the rest of the PRINCIPAL(s) and INDEMNITOR(s).

Contract Indemnity Form (Ed: 05/01/05)

**SET OFF**

**TWENTY NINTH:** SURETY may reduce the amount of PRINCIPAL's and INDEMNITOR's liability to SURETY hereunder by applying to such liability any money payable to PRINCIPAL(s) and/or INDEMNITOR(s) by SURETY. The money payable to PRINCIPAL(s) or INDEMNITOR(s) may be, but is not limited to, any money payable by SURETY as an insurer of PRINCIPAL(s) or INDEMNITOR(s) or as an insurer of any other individual or legal entity, or any money payable to PRINCIPAL(s) or INDEMNITOR(s) as a return of unearned or other premium, or money payable to settle a claim of PRINCIPAL(s) or INDEMNITOR(s) against SURETY or any individual or legal entity insured or bonded by SURETY.

**WAIVER AND MODIFICATION**

**THIRTIETH:** The rights and remedies afforded to SURETY by the terms of this AGREEMENT may not be waived or modified orally and no written change or modification shall be effective until signed by an officer of SURETY.

**TERMINATION**

**THIRTY FIRST:** This is a continuing AGREEMENT which remains in full force and effect until terminated. If PRINCIPAL(s) or INDEMNITOR(s) previously executed a similar agreement of indemnity in favor of SURETY, SURETY's accepting this AGREEMENT neither terminates nor relieves PRINCIPAL(s) or INDEMNITOR(s) from such similar agreements unless terminated in accordance with the terms and conditions of such similar agreements.

This AGREEMENT may be terminated as to PRINCIPAL(s) or any INDEMNITOR(s) upon written notice sent by registered or certified mail to SURETY at its offices at 436 Walnut Street, WA10F, Philadelphia, PA 19106.

Termination of this AGREEMENT shall not be effective until thirty (30) days after receipt of said written notice by SURETY.

Termination of this AGREEMENT shall not relieve PRINCIPAL(s) or INDEMNITOR(s) from liability to SURETY arising out of BOND(s) executed, provided or procured by SURETY on behalf of PRINCIPAL(s) prior to the effective date of such termination.

IN WITNESS WHEREOF, THIS UNDERSIGNED has/have executed this AGREEMENT this ___15___ day of ___June___, 2009.

PRINCIPAL(s): Star Construction Corp.

By _____    Address 77 Gazza Boulevard, Farmingdale, NY 11735
Name and Title  Salvatore Coppola, President

By _____    Address _____
Name and Title

By _____    Address _____
Name and Title

By _____    Address _____
Name and Title

INDEMNITOR(s): Diamante Realty LLC and Salvatore Coppola (Individually)

By _____    Address 77 Gazza Boulevard, Farmingdale, NY 11735
Salvatore Coppola, Managing Member, Diamante Realty, LLC

By _____    Address 8 Wild Run, Smithtown, NY 11787
Salvatore Coppola, Individually

By _____    Address _____

By _____    Address _____

By _____    Address _____

By _____    Address _____

By _____    Address _____

By _____    Address _____

Page 6 of 8

Contract Indemnity Form (Ed: 05/01/06)

FOR NOTARIAL ACKNOWLEDGMENT OF PRINCIPAL(s)/INDEMNITOR(s)

CORPORATE/LLC ACKNOWLEDGMENT

State of _New York_ )
County of _Suffolk_ ) ss:

On this _15th_ day of _June_, 20_09_, before me personally came _Salvatore M. Coppola_ to me known, who being by me duly sworn, deposed and says that (he)(she) is the _President_ of _Shc Construction Corp_ the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_Mindy R. Levy_
(Signature of Notary Public)

MINDY R. LEVY NO. 4750878
NOTARY PUBLIC, State of New York
Qualified in Suffolk County
Commission Expires May 31, 2011

My commission expires _5/31/11_

CORPORATE/LLC ACKNOWLEDGMENT

State of _New York_ )
County of _Suffolk_ ) ss:

On this _15th_ day of _June_, 20_09_, before me personally came _Salvatore M. Coppola_ to me known, who being by me duly sworn, deposed and says that (he)(she) is the _Managing member of_ _Diamante Realty LLC_ the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_Mindy R. Levy_
(Signature of Notary Public)

MINDY R. LEVY NO. 4750878
NOTARY PUBLIC, State of New York
Qualified in Suffolk County
Commission Expires May 31, 2011

My commission expires _5/31/11_

CORPORATE/LLC ACKNOWLEDGMENT

State of _New York_ )
County of _Suffolk_ ) ss:

On this _15th_ day of _June_, 20_09_, before me personally came _Salvatore M. Coppola_ to me known, who being by me duly sworn, deposed and says that (he)(she) is the _President_ of _Shc construction Corp_ the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_Mindy R. Levy_
(Signature of Notary Public)

MINDY R. LEVY NO. 4750878
NOTARY PUBLIC, State of New York
Qualified in Suffolk County
Commission Expires May 31, 2011

My commission expires _5/31/11_

CORPORATE/LLC ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:

On this _____ day of _____, 20____, before me personally came _____ to me known, who being by me duly sworn, deposed and says that (he)(she) is the _____ of _____ the corporation described in and which executed the foregoing Agreement; that (he)(she) knows the seal of the said corporation/company; that the seal affixed to the said Agreement is such corporate/company seal; that it was so affixed by the order of the Board of Directors of said corporation/company, and that (he)(she) signed (his)(her) name thereto by like order.

_____
(Signature of Notary Public)

My commission expires _____

PARTNERSHIP ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:

On this _____ day of _____, 20____, before me personally comes _____ to me known and known to me to be the person(s) a member of the co-partnership of _____ who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same as and for the act and deed of the said co-partnership.

_____
(Signature of Notary Public)

My commission expires _____

PARTNERSHIP ACKNOWLEDGMENT

State of _____ )
County of _____ ) ss:

On this _____ day of _____, 20____, before me personally comes _____ to me known and known to me to be the person(s) a member of the co-partnership of _____ who (is)(are) described in and who executed the foregoing Agreement; and acknowledge(s) to me that (he) (she) executed the same as and for the act and deed of the said co-partnership.

_____
(Signature of Notary Public)

My commission expires _____

Contract Indemnity Form (Ed: 05/01/96)